MATILDA HOLZ LEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7676.   Promulgated April 29, 1927.

The value of land at the time it was acquired as a gift determined from opinion testimony and evidence of actual sales, for the purpose of establishing the basis thereof upon subsequent sale.

*Benjamin Saunders, Esq.*, and *S. A. Blustein, C. P. A.*, for the petitioner.

*J. E. Marshall, Esq.*, for the respondent.

This proceeding results from the determination of a deficiency in tax for the calendar year 1922, in the amount of $28,658.48. The entire deficiency grows out of the profit determined by the Commissioner on the sale of a certain 131 acres of land in the year 1922. The only issue raised relates to the fair market value of the land on the date acquired by the petitioner, February 15, 1918, which constitutes the basis for determining the profit on the transaction.

#### FINDINGS OF FACT.

Petitioner is an individual residing at Ronceverte, W. Va. On February 15, 1918, she acquired as a gift from her mother 131 acres of land situate in Louden District, Kanawha County, W. Va., in the South Hills section overlooking the City of Charleston. The property was sold in the year 1922 for $118,114.96. The property is only two miles from the business center of Charleston, and but a very short distance from the city boundary. This vicinity for a number of years prior to the acquisition of the property in question by petitioner, had been the site of expensive homes and a very desirable residential subdivision. The property was accessible to Charleston and prior to 1918 a hard road had been extended to within a quarter of a mile of the same. The topography of the land as a site for homes and subdivisions was superior to adjacent land.

Land values in and around Charleston increased as a result of the World War. On April 6, 1917, the United States Government had located an armor plate plant in South Charleston at an expense from $20,000,000 to $30,000,000 and this was followed by the loca-

tion of a nitro plant a short distance from Charleston. The United States Government expended on the nitro plant in 1917 and 1918 between $75,000,000 and $80,000,000, and the employment of people incident to the construction, ran from 15,000 to 22,000 or 23,000 persons. There were employed at the armor plate plant between 600 and 800 persons. The demand for residential property in Charleston in 1918 caused values to reach the highest points prior or subsequent to that year. In 1916 property within one-half mile of the property of petitioner sold for $600 per acre and in 1918 property within one-fourth mile of petitioner's property sold for $1,000 per acre. In 1917 a tract located but a short distance from petitioner's, although slightly nearer Charleston, was sold for $4,000 per acre. Petitioner was approached many times during the year 1918 concerning the sale of her property, but purchasers were advised that the property was not for sale, she desiring to hold the same for enhancement in value.

The property of petitioner was not only valuable in 1918 for subdividing and home sites, but was also underlaid with at least three seams of mineable coal. The property contained approximately 1,958,450 tons of recoverable coal and the minimum royalty rate applicable in the Charleston district during 1918 was 10 cents per ton. · The coal underlying the property could have been mined without making it undesirable as residential property.

Upon the signing of the Armistice on November 11, 1918, there was a cessation of activities in the armor plate plant and the nitro plant. · Real estate subdivisions had been oversold and building in Charleston exceeded the demand. Land values declined and have not to this time reached the peak of 1918 prices.

The fair market price or value of the 131 acres of land of the petitioner on February 15, 1918, was at least $118,114.96.

OPINION.

MILLIKEN: The only issue raised by this proceeding resolves itself into one of fact, i. e., What was the fair market price or value of the property in question on February 15, 1918? The respondent determined a fair market value for the date in question of $178 per acre. We are not informed concerning the data or information which served as a predicate for such a valuation. Petitioner called as witnesses persons who had dealt very extensively in real estate in Charleston and vicinity during the years involved in this proceeding. The local conditions affecting the value of real estate in 1918 and 1922 have been clearly and convincingly presented to us. We have set forth in our findings of fact the inflated values of real estate in 1918 and the deflated values in 1922, the causes and the

results therefor. The valuation for which petitioner contends is not based solely upon a theoretical basis to be deduced from war or postwar conditions, but is also supported by recourse to actual sales of similar and adjacent property. The evidence permits of no other conclusion than that the property sold in 1922 had a fair market price or value of at least $118,114.96 on February 15, 1918.

> *Judgment will be entered on 15 days' notice, under Rule 50.*